IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00551-PAB

RACHEL GERMAN,

       Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

       Defendant.

---

## ORDER

---

    This matter is before the Court on plaintiff Rachel German's complaint [Docket No. 1] filed on March 2, 2013 and defendant's Motion to Remand for Further Administrative Proceedings [Docket No. 14].  Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Titles II and VIII of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.[1]  Defendant asks the Court to remand the case for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I.  BACKGROUND

    On November 1, 2007, plaintiff applied for disability benefits under Titles II and

---

[1]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

XVI of the Act.  R. at 243.[2]  Plaintiff initially alleged that her disability began January 25,

2005, but later amended her alleged onset date to November 1, 2006.  *Id.* at 102.

Plaintiff has thus far appeared at three administrative hearings, and her case has

been remanded twice by the Appeals Council.  Plaintiff's first hearing was held on April

7, 2009 in Raleigh, North Carolina.  R. at 73 (the "first hearing").  On April 24, 2009, the

Administrative Law Judge ("ALJ") issued a decision finding that plaintiff was not

disabled.  *Id.* at 102-109.  On January 19, 2010, the Appeals Council issued an Order

remanding the case to the ALJ with instructions to the ALJ to consider evidence that

had been submitted after the first hearing but before the ALJ's decision had issued.  *Id.*

at 117.  Plaintiff appeared at a second hearing on March 9, 2010 in front of the same

ALJ in Raleigh, North Carolina.  *Id.* at 56 (the "second hearing").  After the second

hearing, the ALJ again found that plaintiff was not disabled in a decision dated May 25,

2010.  *Id.* at 122-130.  On February 3, 2012, the Appeals Council issued an order

finding that the ALJ's decision "d[id] not reflect an adequate evaluation of the opinion

evidence from an 'other source' in accordance with Social Security Ruling 06-03p."  *Id.*

at 137.  The Appeals Council instructed the ALJ on remand to examine the opinions of

several of plaintiff's treaters.  *Id.* at 138.  On February 16, 2012, plaintiff moved to

Pueblo, Colorado.  *Id.* at 55.  As a result, her third hearing, held on August 16, 2012,

took place in Colorado Springs, Colorado in front of ALJ William Musseman.  *Id.* at 28

---

[2]Although plaintiff initially indicated that she was applying for disability benefits
under Title XVIII of the Act, R. at 243, subsequent filings make clear her intention to
apply for disability benefits under Title XVI.  *Id.* at 148 (appointing counsel to act as
plaintiff's representative in connection with her claims under Titles II and XVI of the
Act).

(the "third hearing").  On August 27, 2012, the ALJ issued a decision denying plaintiff's claim.  *Id.* at 21.

The ALJ found that, through the last date insured, the plaintiff had the following severe impairments: fibromyalgia, cervical degenerative disc disease status post fusion, depression, personality disorder, and post-traumatic stress disorder.  R. at 14.  The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id.*, and ruled that plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is limited to simple, routine, repetitive tasks that include the ability to lift and carry small objects such as small tools, docket files, and ledgers."  *Id.* at 15.  Based on this RFC and in reliance on the testimony of the vocational expert ("VE") who testified at the first hearing, the ALJ concluded that plaintiff was capable of performing unskilled occupations such as an "addresser" or "food and beverage order clerk."  *Id.* at 21.  Again, based on the testimony of the VE who testified at the first hearing, the ALJ concluded that such work existed in significant numbers in the national economy.  *Id.*

The Appeals Council denied plaintiff's request for review of this denial.  R. at 1.  Consequently, the ALJ's decision is the final decision of the Commissioner.

After plaintiff filed her opening brief in this matter, defendant moved to remand the case for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  Docket No. 14.  According to defendant, the Appeals Council further reviewed plaintiff's case and determined that remand was appropriate, and that on remand:

The ALJ will . . . reassess the Plaintiff's residual functional capacity,

3

> giving further consideration to the physical and mental residual functional capacity assessments completed by the State agency medical consultants, and obtain supplemental vocational expert evidence to clarify the effect of the assessed limitations on the Plaintiff's occupational base, either through vocational expert testimony or through written interrogatories to a vocational expert.

*Id.* at 1-2.  Defendant's motion further provided that on remand, the ALJ would have discretion as to whether or not he would hold another hearing.  *Id.*  Defendant noted that the ALJ would not be limited on remand to the specific issues identified by the Appeals Council.  *Id.* at 2.  Senior Judge John L. Kane initially granted defendant's motion to remand, Docket No. 15, and the clerk entered a final judgment.  Docket No. 16.  Shortly thereafter, plaintiff filed a motion to amend the clerk's judgment.  Docket No. 17.  On October 31, 2013, Senior Judge Kane granted plaintiff's motion to amend the clerk's judgment.  Docket No. 23.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  Defendant's Motion for Remand

Defendant mounts no defense of the ALJ's decision.  Rather, defendant "has

conceded error" and seeks to remand under sentence four of 42 U.S.C. § 405(g)

("sentence four").  Docket No. 27 at 3.  Sentence four provides that "[t]he court shall

have the power to enter, upon the pleadings and transcript of the record, a judgment

6

affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

Defendant argues that, because the Commissioner has conceded error, the Court need not address the issues raised by plaintiff's brief.  Docket No. 27 at 2. Although defendant concedes error generally, Docket No. 27 at 3, defendant cites no specific aspect of the ALJ's decision that warrants remand.  *See generally* Docket Nos. 14, 27.  Defendant does, however, propose that on remand the Commissioner would order the ALJ to reassess plaintiff's RFC, giving further consideration to the assessments of the State agency medical consultants and obtaining further testimony from a vocational expert ("VE").  Docket No. 27 at 1.  In her motion to amend the Court's order remanding the case, plaintiff objected to defendant's proposed limitations on further proceedings.  Specifically, plaintiff objected that defendant's proposed instructions on remand (1) did not guarantee her a hearing, (2) limited the ALJ's review of evidence to State agency medical consultants rather than the entire record, and (3) allowed the ALJ to obtain supplemental vocational expert evidence either through testimony or written interrogatories.  Docket No. 18-1 at 1.  Plaintiff further noted that defendant's motion to remand did not concede any specific error, and thus argued that plaintiff was entitled to a full hearing on the entire record.  *Id.* at 2.

In support of remand, defendant points out that "it is common that once courts have found any error requiring remand for further administrative proceedings, they decline to address the remaining issues raised by the plaintiff."  Docket No. 27 at 2.  In response to plaintiff's specific objections, defendant argues that "on remand, the ALJ will necessarily re-address the issues Plaintiff raised on appeal."  *Id.* at 3.  With respect

to plaintiff's argument that remand may deprive her of a hearing, the Commissioner

noted that plaintiff "may be afforded the opportunity to testify again," but urged the

Court not to order another hearing, arguing that there is "limited utility" in allowing

further testimony about plaintiff's eligibility for benefits prior to her last date insured.  *Id.*

at 4-5.

While the Court commends the Appeals Council for reviewing this matter and

identifying and attempting to rectify legal error, the Court finds that a voluntary remand

under the conditions proposed by the Commissioner would be inappropriate in this

case.  As the Court discusses in more detail below, the ALJ committed a number of

errors beyond the specific issues the Commissioner proposes to address on remand.

Since plaintiff has already been through three administrative hearings and her case has

been pending for more than seven years, the Court finds the matter ripe for adjudication

on appeal.  *Adams ex rel. Williams v. Barnhart*, 2003 WL 102824 at *13-14 (S.D.N.Y.

Jan. 10, 2003) (denying the commissioner's motion for remand pursuant to sentence

four where the record showed the ALJ's decision was not supported by substantial

evidence).

### D.  The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) failing to meet his burden to show that

plaintiff can perform work that exists in the national economy, (2) improperly evaluating

the medical opinions in the record, (3) improperly evaluating the credibility of the

witnesses, and (4) reaching an RFC finding that is not supported by substantial

evidence.  Docket No. 13 at 5.

The relevant evidence of record is as follows.  Plaintiff has been treated for

8

severe back pain since at least 2004.  R. at 798.  Plaintiff underwent cervical fusion surgery sometime in 2007.  *Id.* at 791.  Both before and after her surgery, plaintiff received treatment for chronic neck pain under primary care manager Lori Haigler.  *See id.* at 501-682 (treatment records from Pain Clinic at Womack Army Medical Center dated December 2006-April 2008).  Since as early as August 2007, plaintiff has received treatment for fibromyalgia.  *Id.* at 548.  In October 2008, plaintiff began treatment at the Fayetteville Pain Center.  *Id.* at 886.  During the course of her treatment at the Fayetteville Pain Center, plaintiff consistently reported pain in the upper, mid, and lower cervical spine and throughout her body due to fibromyalgia, and provided subjective assessments of her pain between nine out of ten and seven out of ten without medication, and between four and five out of ten when medicated.  *Id.* at 863-886.  Plaintiff reported that the pain worsens with "certain amounts of activity" as well as with driving.  *Id.* at 863.  Plaintiff's treating physician, Dr. Viren Desai, diagnosed plaintiff with cervical syndrome and cervical spondylosis in addition to fibromyalgia.  *Id.* at 888-89.  Dr. Desai's examination of plaintiff found that she had tenderness in fourteen out of eighteen fibromyalgia points.  *Id.* at 865.  In October 2010, plaintiff began treatment at Touchstone Health Care West.  *Id.* at 1154.  In her initial intake, she was diagnosed with fibromyalgia by Carolyn Daugherty, a family nurse practitioner.  *Id.* at 1156.  That diagnosis was later confirmed by Dr. Michelle Duran.  *Id.* at 1137.

Plaintiff also has a lengthy history of treatment for mental illness.  In August 2006, plaintiff began treatment at Cape Fear Behavioral Health Systems.  R. at 858. During her initial evaluation plaintiff was diagnosed with cyclothemic disorder, and her

treaters reported that plaintiff had a Global Assessment of Functioning ("GAF") of 40. *Id.* at 861.[3]  Plaintiff's treatment notes indicate that at times she exhibited suicidal ideation and intent, *id.* at 840, 842, 845, 856, and she was diagnosed with a personality disorder. *Id.* at 854.  Plaintiff continued to receive treatment from Cape Fear at regular intervals through early 2010. *Id.* at 1063-1091.

In October 2010, plaintiff was admitted to the emergency room following a suicide attempt. R. at 1323.  Plaintiff spent two days at the emergency room following her suicide attempt and was treated by Dr. Andrea Sciammarella. *Id.*  Dr. Sciammarella diagnosed plaintiff with bipolar affective disorder, personality disorder, borderline, and fibromyalgia, and rated her GAF as 35 upon admission and 45 upon discharge. *Id.*[4] For more than a year after her suicide attempt, plaintiff made regular visits to Dr. Sciammarella. *Id.* at 1164-1180 (chronicling follow-up visits dated November 2010-February 2012).

### 1.  The ALJ's Credibility Determination

Plaintiff argues that the ALJ wrongfully determined that her testimony was not

---

[3]The GAF "is a subjective determination based on a scale of 1-100 of the clinician's judgment of the individual's overall level of functioning." *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir. 2006) (quotation and citation omitted).  A GAF score of 41-50 corresponds to "serious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000)) ("DSM-IV-TR").

[4]Dr. Sciammarella assigned a value of "35 upon admission; 45 upon discharge" in "AXIS V" of her discharge diagnosis.  R. at 1323.  "Axis V is used for reporting GAF, which is 'the individual's overall level of functioning.'" *Dray v. Astrue*, 353 F. App'x 147, 150 n.2 (10th Cir. 2009) (unpublished) (citing DSM-IV-TR 32).

credible.  Docket No. 13 at 16.[5]  "Credibility determinations are peculiarly the province

of the finder of fact, and [courts] will not upset such determinations when supported by

substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  "However,

findings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings."  *Id.* (quotation and

alteration marks omitted).

        The ALJ "did not find the claimant to be particularly credible," and cited three

reasons for this finding.  R. at 19.  First, the ALJ noted that plaintiff "testified that she

cannot wash her hair and cannot keep her arms up due to pain," but noted that she

"always appeared neat and clean at her appointments and did not voice this complaint

to any of her providers."  *Id.*  This distorts plaintiff's testimony.  The ALJ specifically

asked plaintiff about the ability to raise her arms.  *Id.* at 41.  In response, plaintiff

testified that she "sometimes" has problems reaching overhead, and that she "do[es]

things very basic with [her] hair because [she] can't keep [her] arms up too long."  *Id.*

While the ALJ claims that plaintiff testified that she "cannot wash her hair," *id.* at 19,

plaintiff never made any such claim.  Plaintiff's actual testimony was that her pain

causes her to shampoo her hair "really fast."  *Id.* at 41.  Moreover, the ALJ's claim that

plaintiff "did not voice this complaint to any of her providers" is contradicted by the

---

        [5]Plaintiff also argues that the ALJ erred in failing to take into consideration the
testimony of plaintiff's spouse.  Docket No. 13 at 18.  The ALJ's failure to mention
plaintiff's spouse's testimony in prior hearings suggests that he did not consider this
evidence, which is inconsistent with the mandate that the ALJ consider all evidence
presented.  20 C.F.R. § 404.1520(a)(3); *see Blea v. Barnhart*, 466 F.3d 903, 915 (10th
Cir. 2006) (remanding for ALJ's failure to discuss why he rejected the testimony of the
claimant's spouse).

record.  *Id.* at 1121 (physician's certification noting that plaintiff has "difficulty

shampooing hair").  The ALJ's credibility determination in this instance is not supported

by substantial evidence.

The ALJ's second reason for finding that plaintiff was not credible concerned her

testimony about her treatment for chronic pain.  Plaintiff testified that "she goes to the

emergency room on her bad days to get shots of dilaudid or morphine," R. at 19, but

the ALJ "found no support for this in the medical evidence of record."  *Id.*  The Court,

however, notes at least twenty-three instances in the record that corroborate plaintiff's

testimony that she regularly receives dilaudid or morphine in the emergency room to

treat her chronic pain.[6]

The ALJ's third and final basis for finding that plaintiff was not credible was that

plaintiff testified as to "frequent manic episodes in which she would be awake for days

at a time and spend all of her waking hours cleaning."  R. at 19.  The ALJ found that the

testimony that plaintiff spends all day cleaning "contradicts her testimony about her

physical limitations."  *Id.*  The ALJ further found that "[m]anic phases causing [plaintiff]

---

[6] R. at 529 ("the Morphine and Valium that they gave [plaintiff] in the ER didn't work until they gave her Dilaudid"), 938 ("ER visit was for allover pain:  was given antinausea med and dilaudid"), 982 (plaintiff "was seen in the ER a week ago for severe pain and was given IV dilaudid which relieved the pain"), 1126 ("Went to ER x 6 days ago for upper neck and back pain.  Was given a shot of morphine"), 1210 (ER record noting plaintiff was given "10MG Morphine"), 1213 ("Morphine Injection . . . Dose: 10 MG"); 1225 ("Morphine 10MG IVSP"), 1238 ("Morphine 4MG SIVP"), 1253 ("Morphine 4MG IVP"), 1256 ("[plaintiff] was given repeat small doses of morphine"), 1271 ("Dilaudid, 0.5MG IVSP"), 1308 ("10MG Morphine IM"); 1309 ("Patient received . . . Morphine"); 1317 ("Morphine 10MG IM"); 1318 ("Meds In ER: Morphine"), 1383 ("Dilaudid 1MG IM INJ"), 1384 ("We gave the patient: . . . Dilaudid"); 1392 ("Dilaudid 1MG IM"), 1393 ("Pt given: Dilaudid"), 1405 ("Dilaudid, 0.5 MG IVSP"), 1416 ("10MG Morphine IM"); 1417 ("Patient received: . . . Morphine"); 1425 ("Morphine 10MG IM"); 1426 ("Meds in ER: Morphine").

to be active days on end cleaning also contradicts her testimony that she has cramping, tendonitis and carpal tunnel in her hands and wrists[.]" *Id.* Plaintiff argues that the ALJ mischaracterized her testimony.  Docket No. 13 at 17, 21.  The Court agrees.  A review of the transcript of the third hearing indicates that, while plaintiff testified that she experiences "certain manic moments" characterized by "staying up" for days on end, R. at 44, she never testified that her manic episodes cause her to spend "days on end cleaning."  That language appears to have been added by the ALJ.

Because the ALJ's three bases for determining that plaintiff was not credible are based on testimony that is mischaracterized, as well as on the ALJ's erroneous claim that plaintiff's testimony was not consistent with the medical evidence, the Court finds that the ALJ's credibility determination is not supported by substantial evidence.

### 2.  Weighing Medical Opinions

Plaintiff submitted opinion evidence from four sources concerning her physical disability: Lori Haigler, M.D., Mary Mortensen, FNP, Sergio Murillo, M.D., and Michelle Duran, M.D., as well as three sources who discussed her mental disability: Mary Ellen LaVoie, Kathy Kunce, LCSW, MSW, and Andrea Sciammarella, M.D.  R. 16.

Plaintiff argues that the ALJ improperly assigned little or no weight to the opinions of multiple treating physicians.  Docket No. 13 at 10-12.  The opinion of a treating physician is generally entitled to greater weight than that of a non-treating physician because of the unique perspective derived from a treating relationship.  20 C.F.R. § 404.1527(c)(2).  Thus, an ALJ must accord controlling weight to the opinion of a treating physician where that opinion is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  *Id.*  Moreover, the opinion of a treating physician merits some measure of deference to be determined based on an application of the factors listed in 20 C.F.R. §§ 404.1527(c)(2)(I)-(ii), including the length of the treatment relationship, the nature and extent of the relationship, the extent of the supporting evidence, consistency with the record as a whole, and the level of specialization of the treater.  "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).  "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*."  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original) (citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d. Cir. 2000)).

Plaintiff's treating physicians' opinions concerning her physical impairments primarily concern the effect of her fibromyalgia on her ability to work.  *See, e.g.*, R. at 893-894, 1126.  Fibromyalgia is a "syndrome of chronic pain of musculoskeletal origin but uncertain cause."  Stedman's Medical Dictionary fibromyalgia (27th ed. 2000). Fibromyalgia can be the basis for a finding of disability.  SSR 12–2P, 2012 WL 3104869, at *1 (July 25, 2012).  However, because it is "poorly-understood within much of the medical community" and "diagnosed entirely on the basis of patients' reports and other symptoms," *Brown v. Barnhart*, 182 F. App'x 771, 773 n.1 (10th Cir. 2006)

(citation omitted), it "presents a conundrum for insurers and courts evaluating disability

claims." *Welch v. UNUM Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004)

(citation omitted).

The American College of Rheumatology has set forth the following Criteria for

the Classification of Fibromyalgia: a history of pain in all quadrants of the body that

persists for at least three months and at least eleven out of eighteen positive tender

points on physical examination.  SSR 12–2P, 2012 WL 3104869, at *2–3 (July 25,

2012).  Diagnosis includes ruling out "other disorders that could cause the symptoms or

signs" through imaging and other laboratory tests.  *Id.* at *3.  While the "disease itself

can be diagnosed more or less objectively," the "amount of pain and fatigue that a

particular case of it produces cannot be."  *Hawkins v. First Union Corporation*

*Long–Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003).  Accordingly, the "lack of

objective test findings . . . is not determinative of the severity of [a claimant's]

fibromyalgia."  *Gilbert v. Astrue*, 231 F. App'x 778, 784 (10th Cir. 2007); see also

*Richardson v. Astrue*, 858 F. Supp. 2d 1162, 1175 (D. Colo. 2012) (finding that the ALJ

"erred by discounting all of Plaintiff's symptoms from fibromyalgia based on the lack of

objective tests").

### a.  Dr. Haigler, Dr. Duran, and Dr. Sciammarella

The ALJ gave no weight to opinion evidence submitted by Dr. Haigler and Dr.

Duran, R. at 16-17, and "a little weight" to the opinion of Dr. Sciammarella.  *Id.* at 19.

Plaintiff argues that each decision was error.  The Court finds that the ALJ did not err in

failing to afford weight to the specific opinions of Drs. Haigler and Duran as to plaintiff's

functional capacity, as each was contained in a "check the box" form without supporting reports or other documentation. *See id.* at 890-95, 1121; *see also Chapo v . Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012) (finding that an ALJ was "justified in rejecting [a] summary RFC opinion (related in check-box/fill-in-the-blank format with no explanation or supporting report)"). The Court finds, however, that with respect to Drs. Haigler, Duran, and Sciammarella, the ALJ discussed only the opinion forms submitted and did not consider whether those opinions were consistent with plaintiff's treatment history with each provider.

Dr. Haigler was listed as plaintiff's "PCM"[7] from 2006-2009. R. at 629, 902; *see also id.* at 931, 935. Dr. Duran personally treated plaintiff on four occasions between June and October 2011. *Id.* at 1133-1138, 1144-46. Dr. Sciammarella treated plaintiff for more than a year following her suicide attempt in 2010. *Id.* at 1164-80. The ALJ did not acknowledge these treating relationships, other than noting that a two-page treatment record attached to Dr. Sciammarella's opinion indicated "some semblance of a treating relationship." *Id.* at 19. While the ALJ is "not required to discuss every piece of evidence," the "record must demonstrate that the ALJ considered all of the evidence[.]" *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (noting that the ALJ "must consider all relevant medical evidence in making [his] findings"). The ALJ's failure to acknowledge any treatment record beyond what was submitted in the opinion forms does not demonstrate that he considered the evidence of Dr. Haigler, Dr. Duran, or Dr.

---

[7]According to plaintiff, "PCM" stands for Primary Care Manager. Docket No. 13 at 10.

Sciammarella's previous treatment of plaintiff.

### b.  Dr. Rapp

Plaintiff argues that the ALJ erred in omitting any consideration of the opinion of state psychological consultant Dr. Mitchel Rapp, which plaintiff claims contradicts the ALJ's determination that plaintiff has no impairment in social functioning.  Docket No. 13 at 15.  Dr. Rapp concluded that plaintiff had moderate limitations in the ability to interact appropriately with the general public and to respond appropriately to changes in a work setting.  R. at 722.  Dr. Rapp also noted that the claimant would require a "stable, low pressure environment with limited interpersonal demands."  *Id.* at 723.

The Court agrees that the ALJ's failure to consider Dr. Rapp's opinion constitutes error.  The ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton*, 79 F.3d at 1010.  The ALJ concluded, based on the 2009 testimony of the VE at the first hearing, that plaintiff is capable of performing two jobs: addresser and food and beverage order clerk.  R. at 21.  The VE, however, acknowledged that plaintiff could not perform the job of a food and beverage order clerk if she "could not frequently interact with others."  *Id.* at 95.  Dr. Rapp identified this precise limitation, noting that plaintiff requires a job with "limited interpersonal demands."  *Id.* at 723.

Based on the foregoing, the Court finds that the ALJ erred in assigning the proper weight to the opinions of plaintiff's treating physicians.[8]

---

[8]Plaintiff also argues that the ALJ erred in assigning little to no weight to the opinions of other medical sources that do not qualify as "acceptable medical sources" under the regulations.  Docket No. 13 at 13.  While opinions of other medical sources may be accepted to evaluate the "severity of the impairment(s) and how if affects the

### 3.  The ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  Docket No. 13 at 19-20.  The ALJ determined that an RFC of sedentary exertional limitations was "generous," given what the ALJ determined to be conflicting reports of plaintiff's treaters.  R. at 19.  Specifically, the ALJ noted that the opinions submitted by plaintiff provided inconsistent figures with respect to the amount of weight that plaintiff can lift.  *Id.*  Citing plaintiff's reported limited ability to concentrate, the ALJ limited plaintiff to routine, repetitive tasks.  *Id.*

Plaintiff argues that the ALJ ignored numerous pieces of evidence, most notably plaintiff's documented "numbness and weakness in her hands," opinion evidence concerning plaintiff's limited ability to sit, stand, and walk, her need for lengthy breaks, opinions that plaintiff would likely need to miss more than four days of work per month, and evidence that plaintiff would require work with limited interpersonal demands. Docket No. 13 at 19-20.

The Court finds that the ALJ's RFC determination is not supported by substantial evidence.  The ALJ noted an inconsistency between the opinions of plaintiff's treaters with respect to how much weight plaintiff could carry, R. at 19, but then assigned an RFC that was not consistent with any of those opinions.  The ALJ implicitly accepted some of those opinions in limiting plaintiff to lifting and carrying "small objects," but the ALJ ignored the consistent opinions of those same treaters that said she could neither

---

individual's ability to function," SSR 06-03P, 2006 WL 2329939 at *2 (Aug. 9, 2006), the Court finds that it is able to resolve plaintiff's appeal without reference to the opinions of those sources.

sit nor stand for more than two hours in an eight-hour work day and was limited to only occasional fingering. *Id.* at 890; 1189.  Moreover, the ALJ's RFC determination is devoid of any mention of plaintiff's limitations on social interaction, even though, as discussed above, there is substantial evidence in the record that plaintiff has marked difficulties in maintaining social functioning, *id.* at 1195, and would require employment with "limited interpersonal demands."  *Id.* at 723.

Plaintiff argues, and the Court agrees, that the evidence of record precludes plaintiff from performing either of the jobs listed by the VE and adopted by the ALJ.  As the VE testified, where someone "could not frequently interact with others, the [job of] Order Clerk could not be done."  R. at 95.  As to the position of "addresser," plaintiff correctly points out that the Selected Characteristics of Occupations provides that the position of "addresser" requires frequent fingering.  Employment & Training Admin, U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles 07.07.02 (1993 ed.).  Plaintiff's treaters agree that plaintiff's condition limits her to only occasional fingering, up to two hours per day, R. at 894, 1190, and the ALJ cites no contrary evidence.

In sum, the Court finds that the ALJ failed to elicit or articulate a "reasonable explanation" for the finding that plaintiff can perform the listed jobs despite her physical and mental limitations.

A court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Tenth Circuit has recognized that the Commissioner "is not entitled to

adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) (internal citations omitted).  It is appropriate to order an award of benefits where an ALJ erroneously concluded that a claimant is capable of performing sedentary work.  *Id.* at 745-46 ("Because sedentary work is the lowest classification under the statute, there is no need for further proceedings in this matter other than a remand for an award of benefits.").  The length of time that a claimant has been adjudicating his or her claim for benefits is a factor in determining whether to award benefits with remand, *id.* at 746, as is the potential utility of additional fact-finding.  *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Since the ALJ found in favor of plaintiff at step four of his analysis, he had the burden at step five to show the existence of other jobs in the economy that plaintiff can perform.  *See Fischer-Ross*, 431 F.3d at 731.  As explained above, the ALJ did not carry this burden.  More than seven years have elapsed since plaintiff first filed her disability claim.  R. at 243.  She has already been through three hearings before the ALJ.  As the commissioner points out in opposing a full administrative re-hearing of plaintiff's case, the testimony already on record is "far more likely to be accurate than testimony taken more [than] two years after [plaintiff's] date last insured and subject to the fog of time."  Docket No. 27 at 5.  As such, it is unclear what benefit would be gained by additional fact-finding.  Accordingly, an award of benefits without further adjudication is warranted.  *See Salazar*, 468 F.3d at 626.

**III.  CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that the August 27, 2012 decision of the Commissioner that plaintiff

was not disabled is REVERSED.  It is further

**ORDERED** that this case is remanded for an award of benefits.


DATED March 26, 2015.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge